UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY JULIET NG, | Case No.  15-cv-04998-KAW |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| US BANK, NA, et al., | Re: Dkt. No. 75 |
| Defendants. | |

Plaintiff Mary Ng brings this suit against Defendants U.S. Bank, NA, Select Portfolio Servicing Inc. ("SPS"), and Quality Loan Service Corporation ("QLS"), alleging violations of the Real Estate Settlement Procedures Act ("RESPA") and California's Unfair Competition Law ("UCL").  (Second Amended Compl. ("SAC"), Dkt. No. 73.)  Pending before the Court is Defendants SPS's and U.S. Bank, NA's ("Defendants") motion to dismiss the second amended complaint.  (Defs.' Mot., Dkt. No. 75.)  Upon consideration of the moving and responding papers, as well as the arguments presented at the September 1, 2016 motion hearing, and for the reasons set forth below, the Court GRANTS Defendants' motion to dismiss.

## I.     BACKGROUND

### A.     Factual background

In 2007, Plaintiff and her husband took out a $765,000 mortgage from Washington Mutual on a San Jose property.  (Order Granting Motion to Dismiss First Amended Compl. ("Ord."), Dkt. No. 66 at 1.)  Plaintiff executed a Deed of Trust on the San Jose property.  (SAC ¶ 9, Exh. A.)  On April 21, 2010, California Reconveyance Company recorded an "Assignment of Deed of Trust," which was signed by JPMorgan Chase and stated that the beneficial interests under the Deed of Trust were transferred to Bank of America, National Association.  (SAC ¶ 10, Exh. B.)  California

United States District Court
Northern District of California

1    Reconveyance Company also recorded a notice of default on this date.  (SAC ¶ 13, Exh. E.)  On

2    July 21, 2010, California Reconveyance Company, acting as the trustee under the Deed of Trust,

3    filed a notice of trustee's sale.  (SAC ¶ 13, Exh. F.)  On February 8, 2011, JPMorgan Chase

4    recorded an "Assignment of Deed of Trust," again transferring all beneficial interests under the

5    Deed of Trust to Bank of America, National Association, but without explicitly transferring the

6    note.  (SAC ¶ 11, Exh. C.)  Finally, on or around January 24, 2014, ALAW requested a recording

7    of a "Substitution of Trustee," signed by U.S. Bank NA as trustee and successor in interest to Bank

8    of America, N.A.  (SAC ¶ 12, Exh. C.)  The "Substitution of Trustee" substituted ALAW as

9    trustee of the Deed of Trust.  During 2013 and 2014, several other notices of trustee sale were

10   filed, and the most recent notice of trustee sale was allegedly filed in April  2016.   (SAC ¶ 13.)

11          On October 23, 2015, Plaintiff sent a four-page letter to SPS, the loan servicer.  (SAC ¶¶ 4,

12   22, Exh. H ("QWR").)  The letter is titled "Qualified Written Request," ("QWR") and disputes the

13   amount that is owed on the identified loan.  (QWR at 1.)  The letter also raises "a serious concern

14   regarding the actual ownership and servicing of the loan and the underlying security interest and

15   whether such ownership has been properly disclosed to the mortgagors and properly recorded . . .

16   ."  (*Id.*)  The letter thus made 43 requests for information, including a statement of the account and

17   application of all payments made, the original Promissory Note, all past and present

18   owners/beneficiaries or partial owners/beneficiaries, the present lender of the loan, all payments

19   that went to each owner of the Promissory Note, the original Deed of Trust, all past and present

20   owners or beneficiaries of the Deed of Trust, all assignments and transfers related to the Deed of

21   Trust and/or Promissory Note, a copy of any annual escrow statements and notices, documents

22   (*i.e.*, correspondence, agreements, commitments, custodial account documents, release of interest

23   documents, descriptions, and escrow analysis) regarding the Deed of Trust and Promissory Note,

24   and the names and addresses of all persons responding to the request.  (*Id.* at 1-4.)

25          On December 4, 2015, counsel for SPS responded to Plaintiff's letter, stating that SPS had

26   determined that the letter was not a QWR.  (SAC ¶ 23, Exh. I ("SPS Resp.").)  SPS's response

27   contended that Plaintiff's letter "does not identify any purported error in your account or any

28   explanation why you believe your account in error.  Instead, your letter improperly requests

                                                 2

United States District Court
Northern District of California

1    various categories of documents, many of which are beyond the scope of a permissible QWR."

2    (SPS Resp. at 2.)  Additionally, SPS argued that to the extent the letter "states that you 'dispute the

3    amount that is owed' . . . these vague allegations are insufficient to constitute a QWR" because

4    "under RESPA, the letter would need to identify an 'error' in your account, and provide sufficient

5    detail for SPS to understand why you believe an error in your account occurred."  (*Id.*)  The letter

6    also noted that many of the documents regarding the unpaid balance, arrears, fees, and payment

7    history had been provided in other court proceedings, and thus the request was duplicative.  (*Id.* at

8    2-3.)  Despite these alleged deficiencies, SPS enclosed a copy of the payment history, note, deed

9    of trust, assignment of deed of trust, and assignment and assumption agreement.  (*Id.* at 4.)

10       **B.    Procedural background**

11       Plaintiff and her husband filed the instant suit on October 30, 2015, alleging wrongful

12    foreclosure, violation of the Truth in Lending Act (TILA), violation of the Fair Debt Collection

13    Practices Act (FDCPA), fraudulent concealment, and violation of the UCL.  (Dkt. No. 1.)  The

14    case was assigned to Judge Grewal, and all parties consented.  (Dkt. Nos. 8, 9.)  On December 21,

15    2015, Defendants filed a motion to dismiss the complaint.  (Dkt. No. 15.)  On January 5, 2016,

16    Plaintiff's husband filed a notice of voluntary dismissal and dismissed the case on his behalf.

17    (Dkt. Nos. 17, 18.)  Judge Grewal granted Defendants' motion to dismiss with leave to amend on

18    February 9, 2016.  (Dkt. No. 42.)

19       Plaintiff then filed an amended complaint on March 8, 2016, alleging wrongful

20    foreclosure, violations of California Civil Code § 2923.5 and § 2924, slander of title, injunctive

21    relief, violations of TILA, violations of the FDCPA and RESPA, fraud and deceit, and violation of

22    the UCL.  (Dkt. No. 45.)  Defendants filed a motion to dismiss the amended complaint on March

23    25, 2016.  (Dkt. No. 47.)  Before the motion to dismiss could be decided, Plaintiff filed a motion

24    for a temporary restraining order, based on the notice of trustee's sale filed on April 7, 2016.  (Dkt.

25    No. 56.)  Judge Grewal denied the motion for a temporary restraining order, finding that Plaintiff

26    had not made a showing of likelihood of success on the merits because her papers were focused on

27    the merits of wrongful foreclosure, but that "under California law, a plaintiff may not bring a

28    preemptive action for wrongful foreclosure before the sale takes place."  (Dkt. No. 63.)

1   After oral arguments on the motion to dismiss the amended complaint, Judge Grewal

2   granted the motion to dismiss.   Judge Grewal dismissed the wrongful foreclosure claim with

3   prejudice, explaining that to the extent Plaintiff was alleging defects in the assignments, those

4   assignments were recorded more than four years before she brought the suit and thus her claim

5   was barred by the statute of limitations.  (Ord. at 6.)  Further, he noted that "California's non-

6   judicial foreclosure law rejects the splitting-the-note theory," and thus Plaintiff could not claim

7   that her mortgage was rendered void when the Deed of Trust was assigned without the note.  (*Id.*

8   (internal quotation omitted).)  Because the mortgage was only rendered voidable, but not void,

9   Plaintiff lacked standing to challenge the allegedly invalid assignment.  (*Id.*)  Judge Grewal also

10  dismissed the TILA and FDCPA claim with prejudice, but dismissed the RESPA claim without

11  prejudice because Plaintiff failed to allege what the QWR contained and how SPS's response was

12  inadequate.  (*Id.* at 7-9.)  Finally, Judge Grewal dismissed the UCL claim with leave to amend

13  because the predicate violations had also been dismissed.  (*Id.* at 9.)  Judge Grewal allowed

14  Plaintiff to file an amended complaint as to the RESPA claim and the UCL claim only, and further

15  stated that Plaintiff was not allowed to add any new claims without leave of the Court.  (*Id.* at 10.)

16  Plaintiff filed the operative Second Amended Complaint on June 29, 2016, alleging

17  violations of RESPA and the UCL.  The RESPA claim was based on: (1) SPS's failure to send a

18  written response acknowledging receipt of Plaintiff's letter within five days of receipt, (2) SPS's

19  failure to provide a written explanation or clarification for why SPS believed the account of the

20  borrower was correct within thirty days of receipt of Plaintiff's letter, and (3) SPS's failure to

21  provide a specific response to Plaintiff's letter.  (SAC at ¶¶ 24, 25.)  The UCL claim was based on

22  the allegedly invalid assignments and the RESPA violations.  (SAC at ¶¶ 49(a)-(g).)  On July 15,

23  2016, the parties stipulated to amend the Second Amended Complaint, withdrawing the

24  allegations in paragraph 25 (concerning SPS's alleged failure to timely respond to Plaintiff's letter)

25  and paragraphs 49(f) and (g) (same).  (Dkt. No. 74.)

26  Defendants filed their motion to dismiss the Second Amended Complaint on July 18, 2016,

27  along with a request for judicial notice.  (Defs.' Mot., Dkt. No. 75; Request for Judicial Notice

28

("RJN"), Dkt. No. 76.)  Plaintiff filed an untimely opposition on August 12, 2016.[1]  (Pl.'s Opp'n, Dkt. No. 78.)  Plaintiff did not file an opposition to Defendants' request for judicial notice. Defendants filed their reply on August 19, 2016.  (Defs.' Reply, Dkt. No. 80.)

## II.   LEGAL STANDARD

### A.   Request for judicial notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B.   Motion to dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[1] Plaintiff also filed as exhibits to her opposition the same exhibits attached to her Second Amended Complaint.  (Dkt. No. 78-1.)

United States District Court
Northern District of California

1    will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2         "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are

3    inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th

4    Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

5    a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a

6    probability requirement, but it asks for more than a sheer possibility that a defendant has acted

7    unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's

8    liability, it stops short of the line between possibility and plausibility of entitlement to relief."

9    *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

10        Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no

11   request to amend is made "unless it determines that the pleading could not possibly be cured by

12   the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

13   omitted).

14                            **III.    DISCUSSION**

15       **A.    Request for judicial notice**

16        Defendants ask that this Court take judicial notice of: (1) the docket for the Chapter 13

17   bankruptcy action filed by Plaintiff and her husband on October 12, 2010, (2) the docket for the

18   Chapter 11 bankruptcy action filed by Plaintiff and her husband on December 31, 2010, (3) the

19   Notice of Trustee's Sale recorded on April 19, 2013 (4) the docket for the adversary proceeding

20   filed by Plaintiff and her husband on May 7, 2013, (5) the docket for a second adversary

21   proceeding filed by Plaintiff and her husband on May 8, 2013, (6) the Notice of Trustee's Sale

22   recorded on April 7, 2014, (7) the Notice of Trustee's Sale recorded on May 23, 2014, (8) the

23   docket for the Chapter 13 bankruptcy filed by Plaintiff on June 16, 2014, (9) the docket for the

24   adversary proceeding filed by Plaintiff on May 8, 2015, (10) the Bankruptcy Court's order

25   granting relief from the automatic stay entered on October 21, 2015, (11) the Notice of Trustee's

26   Sale recorded on April 1, 2016, (12) the docket for the Chapter 13 bankruptcy filed by Plaintiff on

27   April 25, 2016, (13) the Purchase and Assumption Agreement between Federal Deposit Insurance

28   Corporation (FDIC) and JPMorgan Chase Bank, National Association showing that Chase

United States District Court
Northern District of California

6

1   purchased the assets of Washington Mutual Bank as of September 25, 2008, (14) the objection to

2   the proof of claim filed by Plaintiff and her husband on June 16, 2011 in the Bankruptcy Court,

3   and (15) a copy of the order issued in *Gates v. MGC Mortgage, Inc.*, Case No. B261668.

4           The Court takes judicial notice of the dockets for the bankruptcy proceedings (Exhibits 1,

5   2, 4, 5, 8, 9, 12), filings made in the bankruptcy proceedings (Exhibits 10, 14), and the order

6   issued in *Gates v. MGC Mortgage, Inc.* (Exhibit 15), as judicial notice may be taken of court

7   records.  *See* Fed. R. Evid. 201(b)(2); *Wilson*, 631 F.2d at 119 ("a court may take judicial notice of

8   its own records in other cases, as well as the records of an inferior court in other cases").

9           As for the remaining documents, Plaintiff did not file an opposition to Defendants' request

10  for judicial notice, and so Plaintiff is not deemed to dispute the authenticity of any of the exhibits.

11  The Notices of Trustee's Sale (Exhibits 3, 6, 7, and 11) are true and correct copies of official

12  public records, whose authenticity is capable of accurate and ready determination by resort to

13  sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  The Purchase

14  and Assumption Agreement (Exhibit 13) likewise is judicially noticeable "because it is a

15  document published by the federal government, a matter of public record, and its accuracy cannot

16  reasonably be questioned."  *See Brooks v. Wash. Mut. Bank*, No. C 12-765 WHA, 2012 WL

17  5869617, at *2 (N.D. Cal. Nov. 19, 2012) (internal quotation omitted).

18          Accordingly, the Court GRANTS Defendants' request for judicial notice.

19      **B.    Motion to dismiss**

20          **1.    RESPA claim**

21          RESPA places a duty on loan servicers to respond to borrower requests.  12 U.S.C. §

22  2605(e).  As an initial matter, Plaintiff's RESPA claim against Defendant U.S. Bank NA fails

23  because only Defendant SPS is the loan servicer; U.S. Bank NA is—as alleged by Plaintiff—the

24  successor trustee and current investor for the note, not the loan servicer.  (SAC ¶¶ 4, 5.)  "[O]nly

25  servicers of loans are subject to § 2605(e)'s duty to respond" to letters relating to disputes

26  regarding servicing.  *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012).

27  Therefore, the Court will DISMISS Plaintiff's RESPA claim against Defendant U.S. Bank NA

28

7

1    with prejudice.[2]

2        As for SPS, Plaintiff alleges that she sent SPS a QWR on October 23, 2015, but that SPS

3    did not respond until December 4, 2015 and that SPS's response was not adequate.  (SAC ¶¶ 20,

4    23-25.)

5        First, Defendants argue that Plaintiff cannot bring a claim based on the timeliness of SPS's

6    response.  (Def's. Reply at 2.)  Under RESPA, a servicer must provide a written response

7    acknowledging receipt of the correspondence within 5 business days of receiving the QWR.  12

8    U.S.C. § 2605(e)(1)(A).  Further, within 30 business days after receipt of the QWR, the servicer

9    must make appropriate corrections in the account of the borrower or provide a written explanation

10    or clarification explaining why the account is correct or why the information requested is

11    unavailable.  12 U.S.C. § 2605(e)(2).  In the instant case, Plaintiff has withdrawn her allegations

12    that SPS's response was untimely, and she therefore cannot base a claim on allegations that are no

13    longer a part of her complaint.  (*See* Dkt. No. 74.).

14        Second, Defendants argue that Plaintiff's October 23, 2015 letter is not a QWR because it

15    does not identify any specific error with respect to the servicing of the loan.  (Def's Mot. at 6.)

16    RESPA defines a QWR as a written correspondence that includes the name and account of the

17    borrower, and "includes a statement of the reasons for the belief of the borrower, to the extent

18    applicable, that the account is in error or provides sufficient detail to the servicer regarding other

19    information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).  Servicing, in turn, "means

20    receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . .

21    and making the payments of principal and interest and such other payments with respect to the

22    amounts received from the borrower as may be required pursuant to the terms of the loan."  (12

23    U.S.C. § 2605(i)(3).)  In short, "[a] QWR must seek information relating to the *servicing* of the

24    loan," whereas "a request for loan origination information is not a QWR."  *Petrovich v. Ocwen*

25    *Loan Servicing, LLC*, Case No. 15-cv-33-EMC, 2016 WL 555959, at *8 (N.D. Cal. Feb. 12,

26    2016); *Medrano*, 704 F.3d at 667 ("letters challenging only a loan's validity or its terms are not

27

28    ——————————————
     [2] The same analysis would apply as to Defendant Quality Loan Service Corporation, who Plaintiff
     alleges is the foreclosure trustee.  (SAC ¶ 6.)

United States District Court
Northern District of California

1    qualified written requests that give rise to a duty to respond under § 2605(e)").

2    　　　Several courts have rejected Defendants' contention that a QWR must state a plaintiff's

3    reasons for believing the account was in error.  "Section 2605(e)(1)(B) is written in the disjunctive

4    and therefore does not require that a QWR necessarily contain 'a statement of the reasons for the

5    belief of the borrower, to the extent applicable, that the account is in error.'  A QWR is still valid if

6    it instead 'provides sufficient detail to the servicer regarding other information sought by the

7    borrower.'"  *Lawther v. OneWest Bank, FSB*, No. C-10-54 JCS, 2012 WL 298110, at *15 (N.D.

8    Cal. Feb. 1, 2012) (quoting 12 U.S.C. § 2605(e)(1)(B)(ii); *see also Michel v. Deutsch Bank Trust*

9    *Co.*, No. 1:10-CV-2375 AWI SKO, 2012 WL 4363720, at *9 (E.D. Cal. Sep. 20, 2012) (rejecting

10   argument that the plaintiff must identify what servicing error they were disputing because "[t]hat

11   argument ignores the fact that a borrower may request information related to the servicing of the

12   loan in a QWR").  Although the QWR here does not elaborate on why Plaintiff believed the

13   account was in error, and many of its requests for information were unrelated to the servicing of

14   the loan (*i.e.*, requests for information on all past and present owners, agreements,

15   communications, and descriptions of the Promissory Note and Deed of Trust), there are also

16   requests for information that were related to the servicing of the account, such as an accounting of

17   payment history and an explanation of how the amount due on the Monthly Billing Statement was

18   calculated.  *Compare with Michel*, 2012 WL 4363720, at *10 (finding that a request for

19   information on the identity of the holder of the subject loan does not relate to loan servicing, but

20   that a request for an accounting of the loan (history of payments and future amounts due) did

21   appear to be a valid QWR); *see also* 12 C.F.R. § 1024.36 (where an information request is

22   overbroad or unduly burdensome, "[t]o the extent a servicer can reasonably identify a valid

23   information request in a submission that is otherwise overbroad or unduly burdensome, the

24   servicer shall comply with the [response requirements]").  Thus, the Court finds that Plaintiff's

25   October 23, 2015 letter appears to be a valid QWR.

26   　　　Third, Defendants contend that although Plaintiff's October 23, 2015 letter was not a QWR

27   and thus did not warrant a response, SPS still provided Plaintiff with responsive documents

28   including a reinstatement quote, copies of her payment history, note, deed of trust, assignment of

deed of trust, and an assignment and assumption agreement.  (Def's. Mot. at 6-7; *see also* SPS Resp. at 4.)[3]  Plaintiff has alleged, however, that SPS failed to comply with its statutory duty under RESPA by not giving Plaintiff a statement of the reasons for which SPS believed the account was correct.  (SAC at ¶¶ 26-27.)  *Compare with Varela v. Wells Fargo Home Mortg.*, No. C-12-3502 KAW, 2012 WL 6680261, at *10 (N.D. Cal. Dec. 21, 2012) (rejecting argument that the defendant had adequately complied with RESPA where "Plaintiffs' complaint alleges that Wells Fargo failed to comply with RESPA by only providing limited documents, not explaining why all of the documents were not available, failing to provide Plaintiffs with proof of the debt owed to Defendants, and providing information regarding overdue payments to one or more consumer reporting agencies").  At the hearing, Plaintiff's example of a deficient response included SPS's failure to break down information about whether payments went to interest or the principal, and a breakdown thereof.  Such information is related to servicing, and there are no allegations or judicially noticeable documents that suggest this information was provided to Plaintiff.  *Compare with Lawther*, 2012 WL 298110, at *15 (finding that the court could not conclude that there was an adequate response to the QWR where the court had "examined the response and finds that it lacks particular servicing information requested by Plaintiff, including a 'Statement of Account,' a breakdown of the amount of claimed arrears or delinquencies, and a breakdown of payments as to principal, interests, fees, and costs").  Neither party has provided the documents that SPS enclosed with its December 4, 2015 response, and therefore the Court cannot state for certain whether these documents adequately responded to Plaintiff's requests for information related to the servicing of her account.  Thus, the Court cannot conclude, at this stage, that SPS adequately responded to the QWR.

       Finally, even assuming that Plaintiff's October 23, 2015 letter was a QWR and that SPS's response was inadequate, Defendants argue that Plaintiff's claim would still fail because Plaintiff

---

[3] To the extent that Defendants also argue that SPS was not required to provide a response to the QWR because it sought duplicative information that SPS had previously provided, this argument requires the Court to improperly consider facts outside of the complaint.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.").

has failed to plead pecuniary harm resulting from the alleged violation of RESPA. A plaintiff bringing a cause of action under RESPA for failure to respond to a QWR must allege actual damages. *See Williams v. Wells Fargo Bank, N.A., Inc.*, C 10-00399 JF (HRL), 2010 WL 1463521, at *8-9 (N.D. Cal. Apr. 13, 2010) (listing cases finding that conclusory allegations of damages were not sufficient). In addition, the plaintiff must "point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA." *Allen v. United Fin. Mortg. Corp.*, No. 09-2507 SC, 2010 WL 1135787, at *5 (N.D. Cal. Mar. 22, 2010) (dismissing RESPA claim where Plaintiff alleged he suffered damages of falling behind on his mortgage payments, negative credit impact, and emotional distress, but failed to allege the causal relationship of the damages to RESPA violations); *Varela*, 2012 WL 6680261, at *10 (dismissing RESPA claim where Plaintiffs alleged they were damaged by ongoing penalties, fees, and interest charged by Defendant because Plaintiffs did not allege a causal connection between Defendants' failure to properly respond to the QWR and these losses). Here, Plaintiff's only allegation regarding damages and causation is: "As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained but to be proven at trial." (SAC ¶ 28.) At the hearing, Plaintiff still could not identify a pecuniary harm, only stating that Plaintiff is "still in the dark" as to what her claims against SPS are. This is not adequate for purposes of RESPA.[4]

Because Plaintiff cannot allege a pecuniary harm caused by any inadequate response, this cause of action is dismissed with prejudice.

### 2. UCL claim

California Business and Professions Code § 17200 concerns unfair competition and prohibited activities and states that "unfair competition shall mean and include any unlawful,

---

[4] Plaintiff alleges in her opposition that Defendants' failure to respond harmed her by making it harder for her to understand why Defendants continued to pursue the foreclosure of her house, resulting in the filing of a notice of trustee sale on April 1, 2016 which in turn caused her property value to decrease. (Pl.'s Opp'n at 8.) Even putting aside that these allegations are not contained in her complaint, and therefore cannot be considered, there is still no causal relationship alleged between the failure to respond to her QWR and the notice of trustee sale, which in turn caused her property value to decrease. This is particularly the case when at least five other notices of trustee sales had already been filed—on April 21, 2010, July 21, 2010, April 19, 2013, April 7, 2014, and May 23, 2014—all prior to the alleged RESPA violation. (SAC ¶ 13.)

11

United States District Court
Northern District of California

1    unfair or fraudulent business act of practice."  Cal. Bus. & Prof. Code § 17200.  Each prong of the

2    UCL is a separate and distinct theory of liability.  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d

3    718, 731 (9th Cir. 2007).  In order to state a claim for UCL, Plaintiff must identify an underlying

4    statute that Defendants violated.  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th

5    1050, 1060 (2005) (no § 17200 liability "for committing 'unlawful business practices' without

6    having violated another law").  A business practice is "unlawful," in violation of the UCL, if it

7    violates another state or federal law; the UCL "borrows" violations of other laws and treats them

8    as independently actionable.  *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal.

9    2013).

10                    a.   Standing

11          To have standing, a plaintiff proceeding under the UCL must have "suffered injury in fact

12   and have lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code §

13   17204.  Here, Plaintiff's only allegation of injury is that "[a]s a direct and proximate cause of the

14   acts of the named Defendants, the Plaintiff has suffered economic damages to be proven at trial."

15   (SAC ¶ 54.)  As with the RESPA claim, this conclusory allegation regarding damages is

16   insufficient, and is grounds for dismissal of the UCL claim.  Even if Plaintiff adequately pleads an

17   injury, however, Plaintiff's UCL claim must still be dismissed because it is time-barred.

18                    b.   Statute of limitations

19          Here, Plaintiff alleges two bases for her UCL "unlawful business practice" claim.  First,

20   Plaintiff challenges Defendants' failure to notify Plaintiff within thirty days of the alleged transfer

21   of the Deed of Trust, in violation of TILA.  (SAC ¶ 49(d).)  Second, Plaintiff challenges the

22   "unlawful, improper, and oppressive method of securitizing her Note," and that the loan

23   agreements were in violation of various California statutes prohibiting unlawful contracts.[5]  (SAC

24   ¶¶ 35, 36.)  While Plaintiff frames this second claim as challenging Defendants' inability to

25   demonstrate that they perfected their security interest, at its core this UCL claim concerns the

26   allegedly unlawful assignments and transfers of the Deed of Trust.  (SAC ¶¶ 37-45 (discussing

27   ───────────────────

28   [5] Plaintiff withdrew her UCL allegations based on the alleged untimeliness of SPS's RESPA
     response.  (Dkt. No. 74 (withdrawing paragraphs 49(f) and (g)).)

                                                    12

United States District Court
Northern District of California

1    case law concluding that a home loan borrower has standing to challenge a non-judicial

2    foreclosure because the assignment was void); 50 ("Defendant cannot establish proper transfer

3    and/or endorsement of the Deed of Trust; therefore, the Defendants have not perfected any claim

4    of title or security interest in her Home"); 53 (alleging that Defendants "procured or offered false

5    or fraudulently prepared documents to fabricate the missing gaps in the chain of title"); 55

6    (seeking "an order restraining Defendants from enforcing the DOT and/or NOTE until a judicial

7    determination as to which entity has the lawful authority to do so").

8           Both of Plaintiffs' bases for her UCL claims have already been dismissed *with* prejudice by

9    Judge Grewal.  With respect to the TILA violation, Judge Grewal found that the TILA claim was

10   barred by the statute of limitations.  (Ord. at 7.)  As to Plaintiff's claims based on defects in the

11   assignments, Judge Grewal found that these claims were barred by the statute of limitations and

12   lack of standing.  (Ord. at 6.)  Plaintiff is ultimately attempting to challenge assignments of the

13   Deed of Trust that were recorded over four years before this action was filed.  (SAC ¶¶ 10 (April

14   21, 2010 recorded assignment of deed of trust), 11 (February 8, 2011 recorded assignment of deed

15   of trust)).  While Plaintiff argues in her opposition that equitable tolling should apply, Judge

16   Grewal already considered and rejected that argument, finding that Plaintiff had inquiry notice of

17   the transfers as soon as they were recorded.[6]  (Pl.'s Opp'n at 10; Ord. at 6 n.37.)  Thus, Plaintiff

18   cannot plead a UCL claim based on unlawful business practices because the predicate violations

19   have been dismissed with prejudice.  *See Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp.

20   2d 1177, 1191 (N.D. Cal. 2009) ("since the Court has dismissed all of Plaintiff's predicate

21   violations, Plaintiff cannot state a claim under the unlawful business practices prong of the UCL").

22          Plaintiff argues that she can still bring a UCL claim based on unfair or fraudulent business

23   practices even if the underlying TILA and assignments claims are dismissed with prejudice.  Not

24   so.  The UCL itself has a four-year statute of limitations.  Cal. Bus. & Prof. Code § 17208 ("Any

25   action to enforce any cause of action pursuant to this chapter shall be commenced within four

26

27   _____

     [6] Plaintiff also challenged the assignments in a June 16, 2011 filing in the bankruptcy court,
28   demonstrating that Plaintiff had *actual* notice of her claim more than four years before she filed
     this lawsuit.  *See* RJN, Exh. 14.

years after the cause of action accrued.").  Again, the transfers being challenged occurred more than four years ago, and therefore are outside of the UCL's statute of limitations.  Plaintiff's UCL claim is therefore dismissed with prejudice.

### IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  The Court finds that further amendment is futile, and thus Plaintiff's claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated: September 26, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

14